The City of Wabash v. Carver.

Filed Nov. 19, 1891.

---

No. 14,554.

THE CITY OF WABASH v. CARVER.

NEGLIGENCE.—*Contributory.*—*Crossing Bridge with Traction-Engine.*—In an action by an administrator for the death of his decedent, caused by a defective bridge, a general averment that such decedent was without fault is not overcome by specific averments showing that he attempted to cross the said bridge with a traction steam-engine, with water-tank and threshing machine attached.

BRIDGE.—*Duty of City to Repair.*—The act of March 7th, 1885 (Acts 1885, p. 74), which makes it the duty of boards of county commissioners to build all bridges within the corporate limits of any city or town within the State, the estimated cost of which exceeds five hundred dollars, does not purport to in any other manner interfere with the absolute control of the city over the bridges, nor does it relieve cities from the duty of keeping them in repair.

DAMAGES.—*Excessive.*—In a suit by an administrator for the wrongful death of his decedent, where the evidence shows that such decedent was a widower, with no children dependent upon him, aged seventy-three, strong and vigorous, and actively engaged in business, a verdict for one thousand dollars damages will not be disturbed as excessive.

From the Wabash Circuit Court.

*A. Taylor,* for appellant.

*C. E. Cowgill, H. B. Shiveley* and *H. C. Pettit,* for appellee.

McBRIDE, J.—This was a suit by the appellee, as administrator of Joseph Carver, deceased, to recover damages for his death, which was caused, it is alleged, by the actionable negligence of the appellant.

The complaint charges that a certain bridge within the corporate limits of the city, "over what is known as the Wabash and Erie Canal, where Miami street in said city crosses said canal, the said street being a public highway and street of said city, and said bridge forming a part of said street and highway, and being in almost constant and incessant use by the travelling public of said city and surrounding county in crossing said canal where the same has been erected, was suffered by said city to become and remain greatly out of repair, and in a state of decay and insufficiency for the purposes and uses for which it was erected, and dangerous for all who should pass over the same, the stringers, beams and timbers under and supporting the floor of said bridge becoming entirely rotten, of which rotten and unsafe condition the officers of said city were informed and well knew, and by reason thereof, unfit and unsafe to be travelled over; the same being allowed and suffered to get

into such unsafe, dangerous and rotten condition by said city and its officers, by the defendant's carelessness, negligence and the utter disregard of the safety of those who had a right to pass over the same; * * * that on said 8th day of August, 1887, the said Joseph Carver, now deceased, the personal representative of whom is this plaintiff, being then in good health, and without any knowledge of the unsafe and dangerous condition of said bridge, or that the timbers supporting the floor thereof were rotten, and without any fault, want of care, or negligence on his part whatever, and believing it was entirely safe to so do, and as he had a right to do, attempted to pass over said bridge, from the north side of said canal to the south side thereof, along said street, with what is known as a traction steam-engine and water-tank, and threshing machine attached thereto. And plaintiff avers that when said engine passed onto said bridge, the same being at the time conducted, guided and managed in a prudent and careful manner, the said deceased then sitting on a seat provided and used for the purpose was engaged in guiding and steering said engine, the timbers beneath the floor of said bridge, and supporting the same, because of their neglected, decayed and rotten condition, broke and gave way, and precipitated said engine into said canal, catching and crushing said Joseph Carver between said engine and the water-tank attached thereto, causing and producing his instant death," etc.

The complaint is in two paragraphs, which are substantially alike, except that one paragraph charges actual knowledge by the officers of the city of the defective condition of the bridge, and the other avers facts sufficient to charge them with notice, but does not charge actual notice.

The circuit court overruled demurrers to each paragraph. In this the appellant insists the court erred.

The specific defect, which the appellant contends makes the complaint bad, is, that, notwithstanding the averments that the decedent was without fault, the specific averments are

sufficient to overcome this, and show that he was guilty of contributory negligence.

A reference to the complaint above quoted will show that the averments of freedom from fault on the part of the de-cedent are much more full than are usual, and more full than required by the precedents in this State.

In the case of *Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196 (198), the court said : "It has long been the rule in this State that the general averment that the plaintiff was without fault is sufficient, unless the facts specially pleaded clearly show that he was guilty of contributory negligence." The writer of the opinion cites many authorities abundantly sustaining the rule thus stated, and in addition very clearly vindicates its soundness.on principle.

The specific averments which it is insisted control the general averments negativing contributory negligence, are those showing that the decedent attempted to cross the bridge with a traction steam-engine, with water-tank and threshing machine attached. To sustain the appellee in this contention we would be obliged to hold that to attempt to cross a bridge on a public highway, which is in constant use, with a traction steam-engine, water-tank and threshing machine, is in itself negligence *per se*.

In the case of *Wabash, etc., R. W. Co.* v. *Farver*, 111 Ind. 195, it is stated as a fact, of which the court takes judicial notice, that such engines have become familiar in every agricultural community, that they are customarily moved from place to place over the public highways, and that such use of the highways has become so common that it must be supposed that horses of ordinary gentleness have become so familiar with them as to be safe under ordinary guidance. Whether this assumption of judicial knowledge is fully justified or not need not be here considered. But it certainly can not be true that an averment showing that the decedent was using the bridge in a manner that had become usual and common necessarily carries with it an inference of contrib-

utory negligence so strong that it overcomes all of the usual averments that he was free from fault. No other objection is made to the complaint, and we think it is clearly good.

The appellant filed an answer in three paragraphs, the third paragraph of which avers that the bridge was one the construction of which cost over $500.

To this paragraph the court sustained a demurrer. This answer proceeds on the theory that because the statute (Elliott's Supp., section 1521—Acts of 1885, p. 74) makes it the duty of boards of county commissioners to build all bridges within the corporate limits of any city or town within the State, the estimated cost of which exceeds $500, this inferentially relieves cities and towns of the duty of keeping such bridges in repair. The answer is plainly bad. Cities and towns are by statute (sections 3161 and 3367, R. S. 1881) given exclusive power and control over the streets, alleys, highways and bridges within their respective limits. It was said by this court in the case of *City of Goshen* v. *Myers*, 119 Ind. 196, that " It was evidently the intention of the Legislature by the passage of this statute to leave all public bridges, within the limits of the cities in the State, of which they may take control, under the absolute management of the common council of such cities, and to charge them with the duty of keeping such bridges in repair."

The act of March 7th, 1885, which includes section 1521, Elliott's Supplement above referred to, while it imposes the duty of construction upon the board of county commissioners in certain cases, does not purport to in any other manner interfere with the absolute control of the city over the bridges, nor does it relieve cities from the duty of keeping them in repair. In our opinion that duty still rests upon them.

Complaint is also made that the damages assessed are excessive, and that the court erred in instructing the jury as to the measure of damages. There is some confusion in the record over the instructions given and refused, and, after the

The City of Wabash *v.* Carver.

appellant's original brief was filed, a writ of *certiorari* was awarded for the correction of the record.

The corrections and changes in the record made by the return to this writ removed much that previously appeared objectionable. We deem it unnecessary to encumber the record by bringing into this opinion the instructions given and refused. A careful examination of all of them leads us to the opinion that the jury were sufficiently and correctly instructed as to the measure of damages, and that the appellant was not harmed by the refusal of the court to give any instruction asked by it. Indeed, as we understand appellant's counsel, the objection now is not so much that the court erred in giving and refusing instructions as that the jury erred in assessing damages.

The decedent was about seventy-three years old, a widower, and his children were all of mature years and none of them dependent upon him. The jury awarded $1,000 damages. This the appellant insists was so excessive that the verdict should be set aside.

The evidence showed that the decedent, notwithstanding his years, was strong and vigorous for his age, and actively engaged in business.

In cases of this character, as said by Judge DAVIS, in the case of *Barron* v. *Illinois Central R. R. Co.*, 1 Bissell, 453: "There is no fixed measure of damages, and no artificial rule by which the damages in a given case can be computed."

The jury are necessarily given a somewhat wide range of discretion. We can not say that that discretion has been abused in this case, and that the damages awarded were excessive.

Judgment affirmed.

Filed Nov. 17, 1891.