## CHICAGO, TERRE HAUTE AND SOUTHEASTERN RAILWAY COMPANY *v.* BARNES.

[No. 9,492. Filed March 19, 1918. Rehearing denied June 26, 1918. Transfer denied October 30, 1918.]

1. RAILROADS.—*Crossing Accidents.—Pleading.*—Where a ten year old child was lawfully upon a highway that crossed the defendant's tracks, the defendant owed her the duty to exercise reasonable care for her safety in operating a train toward her, and, under such circumstances, a general charge of negligence is sufficient as against demurrer. p. 357.

2. NEGLIGENCE.—*Pleading.—Contributory Negligence.*—In a complaint to recover damages for a personal injury caused by negligence, it is not necessary to allege the plaintiff's freedom from contributory fault, in view of §362 Burns 1914, Acts 1899 p. 58. p. 357.

3. PLEADING.—*Contributory Negligence.—Questions of Fact.*—In actions for personal injuries caused by negligence, the court may not hold as a matter of law that a complaint discloses contributory negligence, unless the facts pleaded compel such an inference. p. 358.

4. TRIAL.—*Reception of Evidence.—Discretion of Court.*—Though the course of procedure as to the introduction of evidence should as a rule conform to §558, cl. 3, Burns 1914, §533 R. S. 1881, it is within the discretion of the court to permit a party to introduce further evidence after he or his adversary has closed his case in chief, and such action will be reviewed on appeal only where there is an abuse of the discretion. p. 359.

5. RAILROADS.—*Action for Injuries.—Burden of Proof.—Reception of Evidence.*—Since, in actions for personal injuries caused by negligence, the burden is on the defendant to prove the plaintiff's contributory negligence, the plaintiff had the right, after the defendant had closed its case, to offer evidence on such issue to meet that introduced by the defendant. p. 359.

6. RAILROADS.—*Action for Injuries.—Contributory Negligence.—Evidence.—Sufficiency.—Jury Question.*—In an action for damages sustained by a ten year old child in a crossing accident, the evidence is reviewed and *held* sufficient to sustain the verdict for the plaintiff as against an objection that the evidence established contributory negligence as a matter of law. p. 359.

7. NEGLIGENCE.—*Contributory Negligence.—Children.*—In an action against a railroad company for damages sustained by a ten year old child in a railroad crossing accident, where there was no con-

tention that the child was *non sui juris*, the rule is that such child was capable of contributory negligence and was required to use such reasonable care for her own safety as ought ordinarily to be expected from children of like age, knowledge, judgment, discretion and experience, under the same or similar circumstances. p. 363.

8. NEGLIGENCE.—*Contributory Negligence.—Children.—Instruction.* —A child of tender years, who was injured in a railroad crossing accident, was not required to exercise the degree of care incumbent on an adult; hence, instructions on the degree of care required were not erroneous as requiring the conduct of such child to be measured by the standard of a child rather than that of an adult. pp. 363, 365, 366.

9. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Children.*—In determining the question of contributory negligence of a child of tender years, who was injured in a crossing accident, effect is given to diverting causes, to partially obstructed crossings and to the fact that the train which struck the child approached the crossing without giving warning or signals. p. 365.

10. RAILROADS.—*Crossing Accidents.—Action for Injuries.—Contributory Negligence.—Instruction.*—In an action against a railroad company for injuries sustained by a ten year old child in a crossing accident, an instruction that, if a child ten years old finds herself confronted with danger and confusion, caused by the negligence of the defendant's employes in failing to give proper warning, such child would not be required to act with the prudence and promptness of a person of more mature years, was not objectionable as being without the issues, it being directed to the question of contributory negligence. p. 365.

11. APPEAL. — *Review. — Harmless Error. — Instruction.* — In an action for injuries sustained by a child in a crossing accident, an instruction submitting the question whether the child made such use of her physical senses for her own protection as should reasonably be expected of other children of like age, experience and intelligence, though incomplete for failing to limit the conduct of such other children to similar circumstances, was not reversible error, in view of the language of the entire instruction. p. 366.

12. RAILROADS.—*Crossing Accidents.—Instruction.*—In an action against a railroad company for injuries sustained by a ten year old child in a crossing accident, a complaint alleging that the defendant negligently and carelessly drove its engine toward and over the crossing without ringing the bell or blowing the whistle, and without giving any notice of its approach, was sufficient to warrant instructions relative to the duty of blowing

a whistle and ringing a bell required of railroad companies under §5431 Burns 1914, §4020 R. S. 1881. p. 368.

13. APPEAL.—*Review.*—*Harmless Error.*—In an action for injuries sustained by a ten year old child in a crossing accident, where the defendant tendered an instruction that if it failed to give statutory signals, but did give other warnings of the approach of the train, the plaintiff could not recover, the error, if any, in an instruction as to the defendant's statutory duty to give warning signals, was one of which the defendant may not complain, the error having been invited. p. 369.

14. DAMAGES.—*Adequacy.*—*Personal Injuries.*—Where a ten year old child was struck by a train at a highway crossing, and sustained a fracture of a collar bone, and the bone of the forearm, a cut on the head and various other wounds and bruises, a verdict of $1,200 was not excessive. p. 370.

From Vigo Superior Court; *Fred W. Beal*, Judge.

Action by Mary C. Barnes, by William Barnes, her next friend, against the Chicago, Terre Haute and Southwestern Railway Company. From a judgment for the plaintiff, the defendant appeals. *Affirmed.*

*Beasley, Douthitt, Crawford & Beasley* and *William F. Peter,* for appellant.

*Walker & Blankenbaker,* for appellee.

CALDWELL, J.—In the western edge of the town of Lewis, Vigo county, a public highway extends north and south. Appellant's single track railroad extends through the town intersecting the public highway practically at grade, the direction of the former at the point of intersection, and for some distance north-westward therefrom, being north thirty-five degrees west. On September 23, 1913, at about five o'clock p. m. appellee, a child ten years old, while walking south along the highway, attempted to cross appellant's track, whereupon she was struck by one of appellant's trains southward bound, and was thereby seriously injured. She by her next friend brought

this action to recover damages on account of such injuries. A trial resulted in a verdict for $1,200, upon which judgment was rendered.

Appellant urges that the complaint contains no sufficient averment of negligence or of proximate cause, and that the complaint affirmatively dis-

1. closes that appellee was guilty of contributory negligence, and that as a consequence the court erred in overruling the demurrer filed thereto. The substance of the charge of negligence, which is repeated in various forms, is that the appellant negligently caused a train to approach and pass over the crossing without ringing the bell or blowing the whistle, and negligently ran the train against appellee without giving any notice or warning of its approach. The complaint discloses that appellee lived south of the intersection, and that she was traveling the highway for the purpose of going to her home. It follows that she was lawfully using the highway. Appellant, therefore, in operating the train towards and over the crossing, owed her the duty to exercise reasonable care for her safety. Under such circumstances the general charge of negligence is sufficient as against demurrer. *Indiana Union Traction Co.* v. *Hiatt, Admr.* (1917), 65 Ind. App. 233, 114 N. E. 478, 115 N. E. 101, and cases.

On the subject of proximate cause it is sufficiently alleged in substance that appellee suffered her injuries by reason of the negligence charged.

In an action to recover damages for a personal injury suffered through the negligence of the defendant, it is not necessary to the sufficiency of the

2. complaint that it contain an allegation of the plaintiff's freedom from contributory fault.

§362 Burns 1914, Acts 1899 p. 58; *Indiana Union Traction Co.* v. *Reynolds* (1911), 176 Ind. 263, 95 N. E. 584. In such a case it is necessary only that the complaint shall not affirmatively show that the plaintiff was guilty of contributory negligence. *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 93 N. E. 561, 95 N. E. 596. Since in such an action a plaintiff is not required to negative his own contributory fault, the inferences on that subject, which may be legitimately deduced from the facts alleged, should be indulged in his favor. In such a case a court may not as a matter of law hold that a complaint discloses contributory negligence, unless the facts alleged compel such an inference. *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017. There is no general averment in the complaint that appellee was free from fault contributing to her injury. The facts alleged, which may be said to bear somewhat on that question, are to the effect that certain buildings, trees, etc., obstructed appellee's view, and prevented her from detecting the approach of the train prior to the time when she was struck as aforesaid; that the train approached without warning; that had the bell been ringing, or the whistle sounded, appellee would have heard such signal and kept off the crossing, and that appellee was a child only ten years old. Measured by the principles above outlined, it does not appear affirmatively that appellee was guilty of contributory negligence. There was no error in overruling the demurrer to the complaint.

Appellee did not testify as a witness while presenting her case in chief. After the close of appel-

4. lant's evidence, the court permitted her to testify respecting her movements and conduct until just before she was struck by the train. It is urged that the court thereby erred.

5. Doubtless the course of procedure outlined by subdivision 3 of §558 Burns 1914, §533 R. S. 1881, should as a rule be followed. However, it is within the discretion of the trial court to permit a party to introduce further evidence after he or his adversary has closed his case in chief, and the action of the trial court in this respect will not be reviewed on appeal, except where it clearly appears that such discretionary power has been abused. *Miller* v. *Dill* (1898), 149 Ind. 326, 49 N. E. 272; *Holmes* v. *Hinkle* (1878), 63 Ind. 518; *Stewart* v. *Stewart* (1902), 28 Ind. App. 378, 62 N. E. 1023; *Noblesville Gas, etc., Co.* v. *Teter* (1890), 1 Ind. App. 322, 27 N. E. 635; 38 Cyc 1363 *et seq.* It does not appear here that appellant was prejudiced by the action of the court, or that there was any abuse of discretion. Moreover, it may be said that most, if not all, of appellee's testimony as a witness bore upon the issue of contributory negligence, respecting which appellant had the burden. She had a right, after appellant had closed its case, to offer evidence bearing on that question meeting testimony offered by appellant. Doubtless the court would have accorded to appellant the right and privilege of rebutting appellee's testimony, if desired.

Appellee challenges the sufficiency of the evidence in its relation to the issue of contributory negligence.

6. The physical surroundings were as follows: The highway extended north and south. The railroad was elevated about a foot, and extend-

.Chicago, etc., R. Co. v. Barnes—68 Ind. App. 354.

ed north, thirty-five degrees west. Both the highway and the railroad approached the intersection on a down grade from the northward. The latter was straight from the intersection for about one mile to the northwest. There were slight elevations and depressions in the track wtihin that distance, however. On the west side of the highway and north of the crossing there was a row of houses; the nearest, the Foreman dwelling, was about 165 feet from the track. About 180 feet up the track and within eight feet of it on the northeast side there was a hand-car house, fourteen feet square and ten feet high. West of the Foreman house there was a barn, and south and west of it there were outbuildings, trees, grapevines, etc., which obstructed the view of the track to a person looking from the highway between the house and the carhouse. East and southeast of the carhouse there were other trees. Along the west side of the highway a picket fence extended south to the north line of the right of way, and thence a distance of about fifty feet there was a wire fence, and next to the railroad there was a cattle guard fence made of horizontal boards, with 8-inch spaces between them. A foot path, commonly used by pedestrians, extended south along the west side of the highway and near the fence. It was depressed somewhat below the surface of the surrounding ground. The path angled southeast near the track and thence along and between the rails to the center of the road, and thence southeast and south along the east side of the highway. The station at Lewis is southeast of the crossing.

The train did not sound the crossing signal for the crossing here. There was some conflict in the evi-

dence whether the whistle was sounded for the station, and whether the bell was ringing at the time of and prior to the accident. The train coasted down the grade towards the crossing at the rate of twenty miles per hour. The power was shut off and it made but little noise. About 150 feet from the crossing, and apparently when the engineer discovered appellee, the danger signal was sounded. Very quickly thereafter appellee was struck and knocked from the track. Appellee approached the track along the path. There was some evidence that she was running, and other evidence that she was walking, and still other evidence that she was walking until she neared the track and that she then ran along, angling across it, until struck near the southwest rail. Immediately after the danger signal was given, a witness who was near the depot ran towards her waving his hat. The engineer testified that appellee was in a falling position before she was struck. To a person traveling along the footpath the view is practically unobstructed up the track as far as the carhouse. There was substantial evidence that at all points along the path until the observer was near the track the view beyond the carhouse was almost completely obstructed. Some time after the accident the carhouse was removed and some of the obstructing trees on Foreman's premises were cut down. There was evidence based on observations made after the removal of the carhouse, but allowing for its presence, that a person standing in the path at the north line of the right of way could see up the track 217 feet, and from a point twenty-five feet from the north rail, 634 feet, and from a point fifteen feet from the north rail, practically a mile.

Appellee's account of the transaction was as follows: After school she went direct to the home of certain relatives living north of the crossing on an errand for her mother. In returning she came along the path; nearing the track she stood on tiptoe and peeked through the fence to see if a train was coming. Not seeing or hearing a train, she went on, as she said, past the railroad, and saw a man running towards her waving his hat. She testified that she did not know what happened after that.

Appellant contends that appellee looked southeast rather than northwest. This contention is based on a statement in her testimony at one place that she peeked through the fence and looked east and south. It is evident, however, that she was confused in directions. Thus, there was no evidence that she was on the west side of the fence west of the highway, and no evidence that there was a fence east of the highway, or, if a fence was there, that she was near it. She testified that the path was on the northeast side of the road, and was confused as to the direction of the highway. She stated also that she looked north through the fence, but saw no train. It therefore seems apparent that the statement to which appellant gives force was the outgrowth of confusion as to directions.

Appellee, prior to the injury, was in good health, had good eyesight and hearing, and was of average intelligence. She was acquainted with the crossing, knew that trains ran on the track there, and had been cautioned to be on the lookout for them.

Can it be said as a matter of law that under this evidence appellee was guilty of contributory negli-

gence? It is neither alleged nor contended that

7. appellee was *non sui juris*. She was therefore capable of contributory negligence and was required to exercise for her own safety such reasonable care as ought ordinarily to be expected from children of like age, knowledge, judgment, discretion and experience under the same or similar circumstances. *Plummer* v. *Indianapolis Union R. Co.* (1914), 56 Ind. App. 615, 104 N. E. 601; *Cleveland, etc., R. Co.* v. *Miles* (1903), 162 Ind. 646, 70 N. E. 985; *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091.

We are not required to determine whether appellee, had she been an adult of average capacity, should under the facts be held guilty of contributory

8. negligence as a matter of law. Appellee was but a child of tender years; she was not required to exercise the degree of care incumbent on an adult. *Baltimore, etc., R. Co.* v. *Hickman* (1907), 40 Ind. App. 315, 81 N. E. 1086; *Terre Haute St. R. Co.* v. *Tappenbeck* (1893), 9 Ind. App. 422, 36 N. E. 915; *Jacobs* v. *Koehler, etc., Co.* (1913), 208 N. Y. 416, 102 N. E. 519, L. R. A. 1917F 7.

The evidence most favorable to appellee was to the following effect: When near the track, the exact point not being disclosed, she stopped and peeked through the fence to see if a train was approaching. She neither saw nor heard a train. The carhouse was 180 feet up the track. From some points of observation along the fence the carhouse limited vision. From other points the scope of vision extended beyond it. The train at twenty miles per hour ran the 180 feet in about six seconds, and other distances in proportion. She saw no train. The carhouse limited her

vision.. But it is said that she should have chosen a point of observation so as to render looking effective. No higher duty than this is required of an adult. *Baltimore, etc., R. Co.* v. *Hickman, supra.* As the train approached it made but little noise; it was coasting, the power off, the bell not ringing. The danger signal was given at a point 120 to 150 feet up the track. This distance was covered by the train in four or five seconds. Immediately following the danger signal appellee discovered a man running towards her excitedly waving his hat. Out of the comparative stillness there came four short, sharp blasts of the whistle, followed by the man running, waving his hat. It may be said that appellee thus had sufficient warning to jump from the track; but possibly the effect of such occurrences was to disconcert, to confuse. The engineer testified that appellee was in the act of falling before she was struck. Had appellee looked up the track when near it, she could have seen the train. She testified that she did not remember whether she looked again after peeking through the fence. She had been warned to look out for trains when crossing the track, but being a child, with the judgment and discretion of a child, perhaps she thought that, as she saw no train when she peeked through the fence, she would have time to cross in safety, even though there was a train beyond the carhouse. Perhaps the instinct of safety, childlike, urged her to hurry across the track by the usual path. There was evidence that she was running, and other evidence that as she neared the track she commenced to run. It is said in a case involving a child somewhat older than appellee and of like knowledge and experience, that, where such a child uses some

care for her own safety, it is for the jury to say whether the care used was such as might ordinarily be expected from a child of such age and experience. *Indianapolis Traction, etc., Co.* v. *Croly, supra; Baltimore, etc., R. Co.* v. *Hickman, supra.*

In case of children of tender years, that effect is given to diverting causes, partially obstructed crossings, and the fact that a a train approaches

9. without signals or warning, in determining the question of their contributory negligence when injured at a crossing, see the following: *Holmes* v. *Missouri, etc., R. Co.* (1905), 190 Mo. 98, 88 S. W. 623; *Crabtree* v. *Missouri, etc., R. Co.* (1910), 86 Neb. 33, 124 N. W. 932, 136 Am. St. 663; *Byrne* v. *New York, etc., R. Co.* (1881), 83 N. Y. 620; *Atchison, etc., R. Co.* v. *Hardy* (1899), 94 Fed. 294, 37 C. C. A. 359; *Byron* v. *Central Railroad* (1906), 215 Pa. St. 82, 64 Atl. 328; *Ewen* v. *Chicago, etc., R. Co.* (1875), 38 Wis. 613.

We conclude that the question of appellee's contributory negligence in this case was one of fact for the jury.

The eighteenth instruction was in part to the effect that, if a child ten years of age finds herself confronted with danger and confusion, caused by

8. the negligence of the employes of a railroad company in failing to give proper warning of the approach of a train to a crossing, such child will not be required to act with the prudence and promptness of a person of more mature years and experience in an effort to avoid injury. The nineteenth contained the element that, in determining the question of appellee's contributory negligence, her conduct should not be measured by the conduct of a person

of mature years; that such a child is required to exercise only such an amount of care as is in accord with her maturity, experience and capacity. The sixteenth submitted to the jury the question whether appellee made such use of her physical senses for her own protection as should reasonably be expected of other children of like age, experience and intelligence.

The eighteenth instruction is objected to on the ground that it was without the issues. It was directed to the question of contributory negligence, and therefore was within the issues. It was applicable also to the evidence, and especially to the situation in which appellee was placed when the warning signals had been given and a man came running, excitedly waving his hat. The sixteenth instruction is criticized because it prescribes as a measure of care the reasonable conduct of other children of like age, etc., generally, without limiting such conduct of such other children to circumstances the same or similar to those in which appellee found herself placed. The instruction to be complete should have contained such element. We believe, however, that such element is reasonably understood, and that the jury could not have been misled by its omission, especially in view of the language of the entire instruction. The court was speaking of appellee's conduct in approaching and attempting to cross the railroad, and in that connection stated that the jury should determine from the evidence whether she exercised the care that would reasonably be expected of other children, etc. We do not believe that the jury could have received any other impression from the instruc-

tion than that the court was speaking of the circumstances in which appellee found herself placed. Like instructions not containing the omitted elements have been approved. *Jacobs* v. *Koehler, etc., Co., supra.* The sixteenth, eighteenth and nineteenth instructions are criticized also by reason of the element that appellee's conduct should be measured by the child rather than the adult standard. There was no error in this respect, as applied to such a child as is involved here. See the following: *Baltimore, etc., R. Co.* v. *Hickman, supra; Terre Haute St. R. Co.* v. *Tappenbeck, supra; Indianapolis, etc., R. Co.* v. *Wilson* (1893), 134 Ind. 95, 33 N. E. 793; *Cleveland, etc., R. Co.* v. *Miles, supra; Railroad Co.* v. *Gladmon* (1872), 15 Wall. 410, 21 L. Ed. 114; *Linthicum* v. *Truitt* (1911), 2 Boyce (Del.) 338, 80 Atl. 245; *Wright* v. *Detroit, etc., R. Co.* (1889), 77 Mich. 123, 43 N. W. 765; *Springfield, etc., R. Co.* v. *Welsch* (1895), 155 Ill. 511, 40 N. E. 1034; *Vessels* v. *Metropolitan St. R. Co.* (1908), 129 Mo. App. 708, 108 S. W. 578; *Jacobs* v. *Koehler, etc., Co., supra,* L. R. A. 1917F, note p. 13 *et seq.*

In the case last cited, the following is said respecting the contributory negligence of a child fourteen years of age: "There doubtless comes a time in the life of a child when, though still in law an infant, it reaches such maturity that no distinction on account of age can be drawn in its favor. It is not necessary to determine what that time is. It is sufficient to say that, if a question of law and not of fact, the age is greater than that of deceased."

The court by the fourth instruction informed the jury respecting the substance of the statute requiring

that the whistle be sounded and the bell rung as a locomotive engine approaches a highway crossing, the reference being to §5431 Burns 1914, §4020 R. S. 1881, and, by the sixth instruction, that by the terms of such statute the whistle must be sounded three times distinctly when the engine is not more than 100 rods or less than eighty rods from the crossing, and that the bell must be rung continuously after the whistle is sounded and until the engine shall have passed the crossing; and by the tenth instruction that the failure either to sound the whistle or to ring the bell as required is negligence; and by the twenty-first instruction that the complaint contained a charge of negligence predicated not only on the breach of a common-law duty, but also a charge based on the failure to ring the bell as required by the statute.

It is urged that these instructions were erroneous for the alleged reason that the complaint contains no charge of negligence based on the failure to give the statutory signals. The complaint charges that appellant negligently and carelessly drove its engine towards and over the crossing without ringing any bell or blowing any whistle, and without giving any notice or warning of the approach of the train, and that appellant negligently and carelessly ran said train against appellee, without giving any notice or warning of the approach thereof, and that appellant negligently and carelessly ran said train upon the crossing and against appellee, without ringing any bell or sounding any whistle, or giving any notice or warning of the approach thereof. In addition to these general allegations, the complaint contains allegations directed to acts and omissions of appellant when the train was within 300 feet or 400 feet of the crossing.

While it would seem that good pleading requires that the allegations of a complaint based on the failure to give the statutory signals should be more specific than as indicated above, yet under the decided cases, in view of such general allegations, the complaint states a cause of action based on the failure to give the statutory signals. *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 95 N. E. 1109, 42 L. R. A. (N. S.) 367; *Baltimore, etc., R. Co.* v. *Young* (1896), 146 Ind. 374, 45 N. E. 479; *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 93 N. E. 561, 95 N. E. 596. It follows that the criticism of such instructions as indicated is not well grounded. Moreover, the question whether the engine bell was ringing as the train approached the crossing was tried out; in addition there was uncontradicted evidence, heard without objection, that the whistle was not sounded for the Foreman crossing as required by the statute. Under such circumstances, if it might be said that the complaint does not contain a sufficient charge of negligence based on the failure to give the statutory signals, it should be deemed amended to conform to the evidence. *Chicago, etc., R. Co.* v. *Gorman* (1915), 58 Ind. App. 381, 106 N. E. 897. Also, appellant by its sixth tendered instruction apparently recognized that the failure to give the statutory signals was one of the questions involved in the case. That instruction contained language to the effect that, if appellant failed to give the statutory signals, but did give other sufficient warning of the approach of the train, appellee could not recover. Under such circumstances, if there were error in giving the instructions under consideration, it should be classed as invited, and of which appellant may not be heard to

complain. *Chicago, etc., R. Co.* v. *Gorman, supra,* and cases.

The injuries that appellee suffered consisted of a fracture of the collar bone, and also of a bone of the forearm, a cut on the head, and various other wounds and bruises. There was conflict in the evidence respecting the extent to which she was permanently injured, if at all. Under the rule that governs on appeal, we do not regard as excessive a verdict for $1,200.

There are 109 causes assigned for a new trial, a large number of which are presented by the briefs. Those not specifically discussed in this opinion have also received the careful consideration of the court. We find in them no substantial error.

Judgment affirmed.

Note.—Reported in 119 N. E. 26. See under (7) 33 Cyc 1114; (8, 11) 33 Cyc 992, 1138; (13) 17 C. J. 1101.