LEO B. DONOVAN, by next freind, Respondent, v. KANSAS CITY ELEVATED RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1911.

1. CARRIERS OF PASSENGERS: Negligence: Unavoidable Accident: Defective Apparatus: Jury Question: Res Ipsa Loquitur.  This was an action for damages for injuries suffered by the negligence of defendant, the elevated railway company.  Plaintiff was a passenger on a street car, and was struck on the head by the wheel of a trolley, crashing through the roof.  The trolley had gotten out of place, and had collided with the overhead beam of the defendant's elevated structure.  There was a defect at the point where the wheel or head joined the trolley

pole and it was partially fractured at some time prior, and had been repaired. Held, that plaintiff's injury was not the result of unavoidable accident, but that it was for the jury to say whether defendant, in the exercise of the highest degree of diligence could not have discovered the defect, and that the doctrine of res ipsa loquitur applies where the charge of negligence is general, as in this case.

. 2. ————: Pleading: Petition in Alternative: Waiver by Answer. Where the allegation as to the charge of negligence in the petition was "that the trolley pole or part of the trolley pole, or a portion of the trolley pole, or a part or portion of the . machinery of said car was, through the negligence of defendant allowed to crash through the roof of the vestibule," held, that, although the petition is certainly defective because in the alternative, and would have been held so upon demurrer or motion, the defendant, by answering, waived the defects, and it cannot be said that there is no cause of action stated. ·

3. TRIAL PRACTICE: Physical Examination Before Jury: When Unnecessary. There is no error in the action of a trial court in refusing defendant permission to examine in the presence of the jury the head of a plaintiff injured by being struck by the wheel of a trolley pole, where defendant's doctor had already made such an examination, and where no further examination was required, but the offer of defendant was not made in good faith, but for the purpose of eliciting an objection in the jury's presence from plaintiff's counsel.

Appeal from Jackson Circuit Court.—Hon. Thomas J. Seehorn, Judge.

AFFIRMED.

J. H. Lucas and H. H. McCluer for appellant.

(1) The court erred in overruling defendant's motion in arrest of judgment for the reason that the petition does not state facts sufficient to constiute a cause of action. Stone v. Graves, 8 Mo. 148; State v. Fitzsimmons, 30 Mo. 236; State v. Pittman, 76 Mo. 56; State v. Fairgrieve, 29 Mo. App. 641; Comonwealth v. Abell, 29 Ky. 476 (6 J. J. Marsh). (2) The court erred in· refusing the defendant's instructions in the nature of a demurrer to the evidence offered at the close of the plaintiff's case, and again at the completion

of all the testimony. The court erred in giving instructions No. 1-P and 2-P asked by plaintiff, and each of them. The court erred in refusing to admit the following evidence offered on behalf of the defendant. Graves v. City of Battle Creek (Mich.), 54 N. W. 757, and cases cited; Hall v. Town of Manson (Iowa), 68 N. W. 922; Haynes v. Trenton, 123 Mo. 326; Orschlen v. Scott, 90 Mo. App. 352. (3) The court erred in not sustaining the motion for a new trial on account of the errors above, and because the verdict is excessive, and the result of bias and prejudice on the part of the jury. Empey v. Cable Co., 45 Mo. App. 425; Snyder v. Railroad, 85 Mo. App. 498; Garnett v. Grenwell, 92 Mo. 125; Duggan v. Railroad, 46 Mo. App. 268.

*Milton J. Oldham, Jesse James* and *Henry G. Latshaw* for respondent.

(1) When the facts of the case are such that the doctrine of *res ipsa loquitur* applies, the petition is sufficient and states a cause of action when general negligence is alleged. Price v. Railroad, 220 Mo. 435; Loftus v. Railroad, 220 Mo. 470; Chlanda v. Transit Co., 213 Mo. 244; O'Gara v. Transit Co., 204 Mo. 724. (2) The plaintiff made out a prima facie case of negligence against defendant by showing the relationship of passenger and carrier; the breaking of the trolley pole; the consequent injury to plaintiff, and the control, management and operation of the car to have been exclusively in the hands of defendant, its servants and employees. Price v. Railroad, 220 Mo. 435; Loftus v. Railroad, 220 Mo. 470; Kirkpatrick v. Railroad, 211 Mo. 68. (3) When an instruction, general in nature on the measure of damage is given, on behalf of plaintiff, and defendant does not request an instruction setting out the elements of damage or to modify the general language of the instruction given on behalf of plaintiff, the defendant cannot thereafter complain

of said instruction. Geisman v. Railroad, 173 Mo. 654; Parmon v. Kansas City, 105 Mo. App. 691; Waddell v. Met., 213 Mo. 8; Browning v. Wabash, 124 Mo. 55. (4) Where pain of body and mental anguish resulting from an injury are elements which enter into the estimate of damage sought to be recovered, a verdict of the jury in such a case will not be disturbed on account of being excessive, unless so excessive as to shock the moral sense and understanding and to satisfy the unbiased mind that it is not the result of fair and unprejudiced deliberation, but that it is the result of prejudice, passion and bias. Waechter v. Railroad, 113 Mo. App. 270; Longan v. Weltmer, 180 Mo. 322; Minter v. Bradstreet Co., 174 Mo. 444; Perrette v. Kansas City, 162 Mo. 238; Rice v. Wabash, 101 Mo. App. 459.

BROADDUS, P. J.—The plaintiff by his next friend alleges that on the 22d of February, 1909, in the night time, he suffered an injury occasioned by the negligence of defendant. The gravamen of the charge is as follows: "Plaintiff states that on said February 22, 1909, he was a passenger on one of defendant's east-bound cars on said elevated structure and was standing in the rear vestibule of said car as the same approached the union depot stop on said elevated structure. Plaintiff states that just before said car reached said union depot stop, the trolley pole or part of the trolley pole or a portion of the trolley pole or a part or portion of the machinery of said car which was placed above said car was, through the carelessness and negligence of defendant allowed and permitted to come, fall or crash through the roof of said car and the roof of said vestibule, where plaintiff was then standing, and upon and against plaintiff's head, thereby injurying plaintiff in this, to-wit: Plaintiff's head was cut open, his brain was concussed, his scalp bruised and lacerated and his skull fractured. That

on account of said injuries and as a direct result thereof plaintiff suffered a severe concussion of the brain; his nervous system was severely and permanently shocked and deranged; his brain power and memory impaired; his eyesight and hearing impaired and his general health impaired.

"Plaintiff says that all of said injuries and the results therefrom were directly caused by the carelessness and negligence of defendant as above set forth.; plaintiff says on account of said injuries. he has suffered and will so long as he lives, suffer great physical pain and mental anguish, and plaintiff's ability to earn a livelihood has been greatly and permanently diminished on account of and as a direct result of said injuries."

The plaintiff, a boy fifteen years of age at the time mentioned, boarded one of the defendant's cars at Tenth and Central streets, Kansas City, Kansas, for the purpose of going to Kansas City, Missouri. The evidence on his part is that; the car was crowded and that in company with another boy, he stayed in the rear vestibule near the back in the southwest corner; that while the car was going at a high rate of speed on the elevated railroad track approaching the union depot, the trolley got out of place, and struck the overhead beam of the elevated road way, which caused the trolley pole to break and the wheel or the end thereof came down upon the roof of the car breaking through it and striking plaintiff on the head causing a severe and permanent injury. There was medical testimony to the effect that his skull was fractured and that he suffered from a concussion of the brain.

It was shown that there was a defect at the point where the wheel or head joined the pole; that it was partly fractured at some time prior to the date of plaintiff's injury and had been repaired. The defendant's witness testified that the defect was inside of the material and could not be detected by inspection.

The testimony of defendant tended to show that the trolley pole mentioned was of the kind in general use and reasonably safe; and its medical testimony was to the effect that there was no fracture of the plaintiff's skull and that his injury was slight.

While Doctor Iuen was testifying, the defendant's counsel said: "If there is no objection, doctor, examine this boy's head and see whether there is any indention there, in the presence of the jury. You will not permit him to examine the boy's head to see whether there is any indention; do you object to the offer made?" The plaintiff's counsel said: "I think you had better argue the case when you come to it; if you wanted to examine him you knew how to get at it." The court said: "You are making an objection to it; the objection is sustained." The doctor had already examined plaintiff's head and testified that there was no indention of the skull.

At the close of plaintiff's case and at the close of all the evidence the defendant asked the court to direct a verdict to the effect that he was not entitled to recover, which the court refused. Instruction One and Two given for the plaintiff were objected to by defendant. The jury returned a verdict for plaintiff for $1000. From the judgment rendered defendant appealed.

The appellant insits first; that the petition does not state a cause of action, in that, it is in the alternative. It is true that the allegation as to the charge of negligence is that: "the trolley pole or part of the trolley pole or a portion of the trolley pole, or a part or portion of the machinery of said car was, through the carelessness and negligence of defendant allowed to crash through the roof of the vestibule," etc. The petition is certainly defective in the respect mentioned, and would have been so held upon demurrer or motion, but the defendant by answering waived such defects, as it cannot be said there is no cause of action stated.

The principal question in the case is whether the plaintiff made out a case of negligence. It is claimed by the company that plaintiff's injury was the result of an unavoidable accident. If so, then defendant ought to be excused. But we are not satisfied that such a conclusion can be drawn from the testimony. We are not satisfied that an inspection would not have disclosed the prior existing defect in the connection between the pole and the wheel, and that it was for the jury to say whether the defendant, in the exercise of the highest degree of diligence, could not have discovered the said defect. The plaintiff's instruction one properly declares the law as to the duty of the carrier to its passengers. [O'Gara v. Transit Co., 204 Mo. 724.] And it is said in speaking of the duty of the carrier under the circumstances of a certain case that: "The collapse of the floor of a street car beneath a passenger who is simply walking on it, resulting in an injury, is evidence of negligence on the doctrine of *res ipsa loquitur*. It is a mishap of an extraordinary character to an appliance within the exclusive control of the railroad company, and one that is not likely to happen in the absence of negligence on the part of the company's employees." [Jordan v. Railway Co., 122 Mo. App. 330.] But it may be said that the doctrine of *res ipsa loquitur* does not apply to a case where a specific charge of negligence is made. But here the charge is general. It is said in a case somewhat similar, that the petition was broad enough to admit the application of that doctrine. [Chlanda v. Transit Co., 213 Mo. 244.] However that may be, there can be no doubt that defendant owed to the plaintiff the duty of exercising the highest practical degree of care, and when it was shown that the pole broke in consequence of its weakened condition, it devolved upon defendant to show to the satisfaction of the jury that it had used such care. The jury was not bound to take the statement of defendant's witness as true that the defect

in the pole could not have been discovered by inspection. Were it otherwise, the injured party would usually be at the disadvantage of being concluded by the one-sided evidence of the carrier as to matters exclusively within the knowledge of its own employees.

We can see no valid objection to instruction two given on plaintiff's measure of damages, as it limits his recovery to such injuries as he sustained by reason of being struck on the head by the trolley pole. [Geismann v. Mo.-Edison Electric Co., 173 Mo. 654; Waddell v. Met. St. Ry. Co., 213 Mo. 8.]

We do not think there was any error in the action of the court in refusing defendant permission to examine plaintiff's head in the presence of the jury, as he had already made such examination, and no further examination was required. It appears to us that the offer was not made in good faith, but for the purpose of eliciting an objection from plaintiff's counsel, so as to prejudice plaintiff in the minds of the jury. It looked like stage play, and it was the duty of the court to refuse the request. Other questions which we do not deem important or well taken are raised by defendant. Affirmed. All concur.